UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 21-155 |
| v. | * | SECTION: "L" |
| MAURICE PALMER | * | |

\* \* \*

## FACTUAL BASIS

The United States and defendant **MAURICE PALMER** ("**PALMER**") stipulate and agree that the below facts are true and that they would have been proven beyond a reasonable doubt had this matter proceeded to trial. The United States and **PALMER** further stipulate and agree that these facts provide a sufficient basis for a plea of guilty to the charge that **PALMER**, not being lawfully entitled to a certificate, license, and document issued to officers and seamen by any officer and employee of the United States authorized by law to issue the same, did receive and possess said certificate, license, and document, with intent unlawfully to use said certificate, license, and document, in violation of Title 18, United States Code, Section 2197. The below facts are offered for the purpose of establishing a sufficient factual basis to support the guilty plea and therefore do not necessarily describe all the details of the offense or **PALMER**'s complete knowledge of the offense.

A.  At all times relevant herein:

Federal statutes and regulations ("federal law") authorized the United States Coast Guard ("USCG") to issue merchant mariner credentials ("MMCs") and related endorsements. Under federal law, all mariners employed aboard United States merchant vessels greater than 100 Gross Register Tons, with a few limited exceptions, were required to have valid MMCs. Furthermore, to



AUSA _____
Defendant _____
Defense Counsel _____

serve in various positions, federal law required mariners to have particular endorsements added to their MMCs. Consequently, an MMC and each endorsement to an MMC each constituted a "certificate, license, or document," as described in Title 18, United States Code, Section 2197.

Endorsements determined what position mariners could work, on what kind of vessels, and in what waters. The presence of an endorsement on an MMC indicated that the mariner was qualified to serve in the specified capacity and that he had met all legal requirements for that endorsement. Federal law prohibited a mariner from serving in a position for which he lacked the required endorsement. Similarly, federal law prohibited a business from employing a mariner in a position for which he lacked the required endorsement.

In order to obtain an MMC, a mariner was required to meet various requirements and to take an oath, promising to faithfully and honestly perform all the duties required by the laws of the United States. For many endorsements, federal law required mariners to pass USCG-administered examinations. These examinations tested mariners' knowledge and training to safely operate under the authority of the endorsements. The examinations, which typically consisted of numerous separately-graded modules, were administered at USCG regional exam centers. One such regional exam center, known as REC New Orleans, was located in the Eastern District of Louisiana. USCG employees at the regional exam centers entered the scores into a computer system used to manage the issuance of credentials to mariners and to process applications for MMCs and endorsements.

In some situations, passing an examination for one endorsement could enable a mariner to obtain one or more additional endorsements. This could occur, for example, if the examination fulfilled a requirement for an additional endorsement or if obtaining the tested for endorsement fulfilled a requirement for an additional endorsement.


AUSA CM
Defendant mp
Defense Counsel

**B.     PALMER received, possessed, and intended to use endorsements to which he was not lawfully entitled**

**PALMER** was a mariner who sought to add officer-level endorsements to his MMC. Micheal Wooten ("Wooten") and Alexis Bell ("Bell") were mariners known to **PALMER** who each separately informed **PALMER** that each could, in exchange for money, arrange for mariners to receive false passing examination scores at REC New Orleans.

**PALMER** sought to add what is known as a Third Mate Unlimited Tonnage Upon Near Coastal Waters ("Third Mate NC") endorsement to his MMC. As **PALMER** knew, in order to lawfully obtain this endorsement, he was required to pass a specific examination at a regional exam center.

Prior to January 15, 2015, **PALMER** formed an agreement with Wooten to pay Wooten a sum of money in exchange for Wooten arranging for a USCG employee at REC New Orleans to falsely report that **PALMER** had passed the examination required for a Third Mate NC endorsement. Pursuant to this agreement, **PALMER** paid Wooten a sum of money.

As a result of **PALMER**'s conduct, on or about January 15, 2015, a USCG employee at REC New Orleans falsely reported in a USCG computer system that **PALMER** had passed the examination associated with his application for a Third Mate NC endorsement. As **PALMER** knew, this false report was made in furtherance of, and was essential to, his receipt of the endorsement. As **PALMER** knew, he had not passed the examination and, therefore, was not lawfully entitled to the endorsement. As a result of **PALMER** intentionally causing the USCG examiner to make this false entry, the USCG issued **PALMER** a Third Mate NC endorsement.

**PALMER** later sought to increase the scope of his Third Mate endorsement by adding what is known as a Third Mate Unlimited Tonnage Upon Oceans ("Third Mate Oceans")

3



AUSA _CM_
Defendant _mp_
Defense Counsel

endorsement to his MMC. As **PALMER** knew, in order to lawfully obtain this endorsement, he was required to pass a specific examination at a regional exam center. Prior to November 18, 2015, **PALMER** formed an agreement with Bell to pay Bell a sum of money in exchange for Bell arranging for a USCG employee at REC New Orleans to falsely report that **PALMER** had passed the examination required for a Third Mate Oceans endorsement. Pursuant to this agreement, **PALMER** paid Bell a sum of money.

As a result of **PALMER**'s conduct, on or about November 18, 2015, a USCG employee at REC New Orleans falsely reported falsely reported in a USCG computer system that **PALMER** had passed the examination associated with his application for a Third Mate Oceans endorsement. As **PALMER** knew, this false report was made in furtherance of, and was essential to, his receipt of the endorsement. As **PALMER** knew, he had not passed the examination and, therefore, was not lawfully entitled to the endorsement. As a result of **PALMER** intentionally causing the USCG examiner to make this false entry, the USCG issued **PALMER** a Third Mate Oceans endorsement.

**PALMER** later sought to add what is known as a Master Less Than 1600 Gross Registered Tonnage Upon Oceans ("Master 1600 Oceans") endorsement to his MMC. As **PALMER** knew, in order to lawfully obtain this endorsement, he was required to pass a specific examination at a regional exam center. Prior to July 21, 2017, **PALMER** formed an agreement with Bell to pay Bell a sum of money in exchange for Bell arranging for a USCG employee at REC New Orleans to falsely report that **PALMER** had passed the examination required for a Master 1600 Oceans endorsement. Pursuant to this agreement, **PALMER** paid Bell a sum of money.

As a result of **PALMER**'s conduct, on or about July 21, 2017, a USCG employee at REC New Orleans falsely reported falsely reported in a USCG computer system that **PALMER** had

4


AUSA CM
Defendant mp
Defense Counsel

passed the examination associated with his application for a Master 1600 Oceans endorsement. As **PALMER** knew, this false report was made in furtherance of, and was essential to, his receipt of the endorsement. As **PALMER** knew, he had not passed the examination and, therefore, was not lawfully entitled to the endorsement. As a result of **PALMER** intentionally causing the USCG examiner to make this false entry, the USCG issued **PALMER** a Master 1600 Oceans endorsement.

As **PALMER** knew, possession and use of the above-referenced endorsement and/or the examination required for that endorsement, satisfied some of the requirements to obtain what is known as Second Mate Unlimited Tonnage Upon Oceans ("Second Mate Oceans"). **PALMER** used his above-referenced fraudulently-obtained endorsement and/or false examination scores to obtain a Second Mate Oceans endorsement. As **PALMER** further knew, he was not lawfully entitled to the Second Mate Oceans endorsement because the USCG issued it based on the belief that **PALMER** legitimately obtained the above-referenced passing examination scores.

The aforementioned endorsements, to which **PALMER** was not lawfully entitled, authorized **PALMER** to, among other things, serve as the master of vessels less than 1,600 gross registered tonnage in any waters and to serve as the second mate of vessels of any tonnage in any waters. The master, also known as the captain, is the officer having command of a vessel. The master is ultimately held responsible for the safety of the crew, vessel, cargo and all aspects of the vessel's operation. The second mate of a vessel holds an officer-level position and is second only to the chief mate in the deck department. The second mate typically is responsible for, among other things, being the navigation officer, voyage plans, keeping watch of the bridge, and maintaining lifesaving equipment.



AUSA
Defendant
Defense Counsel

From on or about January 15, 2015, through on or about March 5, 2020, in the Eastern District of Louisiana and elsewhere, **PALMER**, received and possessed the above-referenced endorsements and an MMC containing said endorsements, knowing that he was not lawfully entitled to them and with the intent to unlawfully use them.

_____    1/31/22
CHANDRA MENON               Date
Assistant United States Attorney


_____    1/31/22
LYNETTE S. BYRD             Date
RICHARD SIMMONS
Counsel for Defendant


_____    01/31/2022
MAURICE PALMER              Date
Defendant

